## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

Glenn S. Horen and Joanne E. Horen,  Case No. 3:08CV2119
        *individually and as next friend of DH*,

        Plaintiffs-Appellants

        v.  ORDER

Board of Education of the Toledo
        City School District, et al.,

        Defendants-Appellees


        This is a suit between the parents of a child entitled to a free appropriate education under the

Individuals with Disabilities Education Act [IDEA], 20 U.S.C. § 1400 *et. seq* and the Toledo Public

Schools [TPS]. The plaintiffs, Glen and Joanne Horen [Parents] appeal the outcome of an

administrative complaint filed by TPS, and allege that TPS violated the IDEA. They also assert

claims under 42 U.S.C. § 1983, Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, and the

Americans with Disabilities Act [ADA], 42 U.S.C. §§ 12131-12165. Their complaint joins two

defendants who were not party to the administrative process: namely, the law firm that has

represented TPS, Spengler Nathanson, P.L.L. [Spengler], and one of its attorneys, Randy L. Meyer.

1

Pending is Spengler and Meyer's Rule 12(c) motion for judgment on the pleadings. [Doc. 9]. Jurisdiction exists under 28 U.S.C. §§ 1331, 1343(a)(3) and 1343(a)(4). For reasons that follow, defendants' motion shall be granted.

## Background

Parents' child, DH, is a ten-year old with multiple disabilities. Parents have filed numerous administrative complaints against TPS and Thom Billau, individually, and in his official capacity as Director of Special Education / Student Services, alleging violations of the IDEA. Parents began filing such complaints in May, 2006, and since that time, DH has not returned to school.

In early 2007, Parents and TPS met several times to draft DH's Individual Educational Plan [IEP]. Parents sought to record these meetings and objected to the presence of TPS' attorney. Due to these disputes, the parties never negotiated or developed DH's IEP.

In July, 2007, TPS filed a due process complaint, later designated by the Ohio Department of Education [ODE] as Case No. SE-1992-2007. This complaint sought an order: 1) directing Parents to participate in IEP meetings without making audio or video recordings unless they have obtained prior consent from TPS; 2) authorizing and confirming TPS' ability to have its attorney present during IEP meetings; and 3) directing Parents to send DH to school or, alternatively, to inform them if she is being home-schooled or otherwise educated.

An Impartial Hearing Officer [IHO] granted TPS' requests, and the State Level Review Officer affirmed the decision. Parents, on behalf of themselves and DH, appealed to this court, and added new claims to their complaint. They also have added Spengler and Meyer.

## Discussion

## Standard of Review

Defendants move for judgment on the pleadings under Fed.R.Civ.P.12(c), which provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." I review Rule 12(c) motions under the same standard as Rule 12(b)(6) motions. *Ross, Brovins & Oehmke, P.C. v. Lexis Nexis Group*, 463 F.3d 478, 487 (6th Cir.2006). If the plaintiff's complaint does not plead "enough facts to state a claim to relief that is plausible on its face," then I must grant defendants' motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974 (2007).

When deciding 12(c) and 12(b)(6) motions, I limit my inquiry to the content of plaintiffs' complaint, with the exception of matters of public record, orders, items appearing in the record and attached exhibits. *See Yanacos v. Lake County, Ohio*, 953 F.Supp. 187, 191 (N.D.Ohio 1996). I must accept all well-pled material allegations stated in the complaint as true and view the complaint in the light most favorable to the plaintiff. *Papasan v. Allain*, 478 U.S. 265, 283, 299 (1986). I am, however, "not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* at 286.

## 1. Rule 12(c) Motion Prematurely Filed

Neither party can file a Rule 12(c) motion for judgment on the pleadings until the pleadings are "closed." Fed.R.Civ.Pro.12(c). This generally occurs upon the filing of a complaint and answer. *Signature Combs, Inc. v. United States*, 253 F.Supp.2d 1028, 1030-1031 (W.D.Tenn. 2003).

If a case has multiple defendants, all defendants must file an answer before a Rule 12(c) motion can be filed. *See, e.g., Habeeba's Dance of the Arts, Ltd. v. Knoblauch*, 2006 WL 968642, at *2 (S.D.Ohio 2006).

Parents claim that Meyer and Spengler's motion is premature because they filed it on October 1, 2008, three weeks before defendants TPS and Billau filed their answer. [1]

I have the discretion to deny the defendants' motion without prejudice, and allow them to re-file the motion on a date subsequent to October 22, 2008 – however, I do not think this serves a useful purpose. *See Habeeba's Dance, supra,* 2006 WL 968642, at *2.

Instead, I will construe the defendants' premature, pre-answer Rule 12(c) motion as a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6). *See Collins v. Muskegon County Sheriff's Dept.,* 2007 WL 426586, *5 (W.D.Mich.); *Jung v. Association of American Medical Colleges,* 339 F.Supp.2d 26, 35 -36 (D.D.C. 2004) ("No prejudice to any party results from treating a Rule 12(c) motion as a Rule 12(b)(6) motion because the standard of review for motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure is essentially the same as that for motions to dismiss under Rule 12(b)(6)."); *Signature Combs, supra,* 253 F.Supp.2d at 1030-1031 (W.D.Tenn. 2003) (construing a Rule 12(c) motion filed approximately two months before the final answer as a Rule 12(b)(6) motion).

## 2. Section 1983

To state a cause of action under § 1983, a plaintiff must allege the deprivation of a right secured by the United States Constitution or federal statute by a person acting "under color of state law." *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155-57 (1978); *Spadafore v. Gardner,* 330 F.3d 849, 852 (6th Cir.2003).

---

[1] Meyer and Spengler filed their answer on September 22, 2008 [Doc. 5], and their Rule 12(c) motion on October 1, 2008. TPS and Billau filed their answer on October 22, 2008 [Doc. 14].

Parents contend that Meyer and Spengler violated § 1983 by depriving DH of her rights under the IDEA, as well as her substantive due process, procedural due process and equal protection rights under the Fourteenth Amendment. Parents sue Meyer and Spengler in their individual and official capacities and seek compensatory and punitive damages.

For the following reasons, all Parents' § 1983 claims lack merit.

### A. Under Color of Law

An individual acts "under color of law" when exercising "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Polk County v. Dodson*, 454 U.S. 312, 329 (1981) (internal citations omitted).

Parents' § 1983 claim fails because they do not sufficiently allege that defendants acted under color of law. Defendants are only connected to the State through their provision of legal services to TPS. In their complaint, Parents rely on this relationship to assert that the defendants are state actors. This contention fails, however, because attorneys do not become state actors by representing state or local governments. *See id. at* 321 (holding that an attorney employed by the state, such as a public defender, still does not have a sufficient relationship to act "under color of state law within the meaning of § 1983").

In their opposition to defendants' 12(c) motion, Parents reformulate their argument as to why defendants are state actors. Now Parents contend that because the State "directs or controls" the defendants' actions, "the state can be held responsible for the private party's decision." *See Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 628 (7th Cir.1999). By failing to allege this in their complaint, Parents' new assertion fails. Indeed, Parents' complaint asserts facts to the contrary – namely, that by acting as TPS' attorneys, defendants became state actors.

5

This new argument also fails on its merits. *See Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (holding that state action is only present if the state "exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State"). There is no indication that the State coerced or otherwise controlled defendants. In fact, Parents belied this new argument by asserting in their complaint that Meyer cancelled an IEP meeting against the wishes of TPS' Billau.

Parents' second reformulation, that defendants engaged  in a "public function," also fails. By pleading that Meyer worked as legal counsel for TPS at all relevant times, Parents' complaint contradicts this new claim.

Moreover, to qualify as "state action," a private party must carry out a function that has historically been the "exclusive" prerogative of the state. *Rendell-Baker v. Kohn*, 457 U.S. 830, 841 (1982). Acting as an IEP team member or overseeing meetings does not rise to this level, as such tasks are not exclusively reserved to the State. Non-state actors often participate in IEP meetings, including the child's parents and other knowledgeable individuals.

Parents further contend that even if defendants are not state actors, they are still liable under § 1983 because they conspired with state actors. *See Lugar v. Edmondson Oil.*, 457 U.S. 922, 931 (1982) (A "private party's joint participation with a state official in a conspiracy to discriminate would constitute both state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights and action under color of law for purposes of [§ 1983]") (internal citations omitted).

Again, Parents' allegations are off the mark. An attorney representing a client cannot "conspire" within the attorney-client relationship. *See Doherty v. American Motors Corp.*, 728 F.2d

6

334, 339-40 (6th Cir.1984) (holding that a company cannot conspire with its in-house or outside counsel); *Evans v. Chichester School District*, 533 F.Supp.2d 523, 529 (E.D.Pa. 2008) ("When an attorney's alleged conspiratorial conduct occurs within the scope of representation, the conduct cannot be characterized as an actionable conspiracy."). The Board and its attorneys are, essentially, one entity, and thus, cannot conspire with one another.

Parents' conspiracy claims are also conclusory and pled with insufficient specificity. *See Gutierrez v. Lynch,* 826 F.2d 1534, 1538 (6th Cir.1987) ("It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983.").  Parents' complaint states that TPS, Billau and Meyer "began a concerted effort" to discriminate; such a general claim unsupported by any facts is the exact type that cannot establish a claim of conspiracy.

### B. Federally Protected Right

To support their § 1983 claim, Parents allege violations of the Fourteenth Amendment's due process and equal protection clauses, and assert that defendants are liable under § 1983 by violating the IDEA. [2] Even if defendants were state actors, Parents' § 1983 claim would still fail because defendants did not deprive them or DH of a federally protected right. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### i. Procedural Due Process

To establish a procedural due process claim under § 1983, plaintiffs  must show that: 1) they have a protectable life, liberty or property interest; 2) the state deprived them of this interest; and

---

[2] I will not evaluate Parents' newly asserted claim that Meyer and Spengler deprived Mrs. Horen of her right to free speech, as such claim was not raised in their complaint.

3) "the state did not afford them adequate procedural rights prior to" this deprivation. *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir.1999).

Parents assert that Meyer and Spengler deprived DH of her property right to education without due process of law. Because defendants are not state actors, they cannot be held liable under the Fourteenth Amendment. *See Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349 (1974) ("[P]rivate conduct, however discriminatory or wrongful," falls outside the scope of the Fourteenth Amendment).

In addition, I do not think that Parents properly alleged that Meyer and Spengler deprived DH of her property right by cancelling the IEP meetings, as much evidence submitted suggests that Parents voluntarily withheld DH from school. However, even assuming that Meyer and Spengler deprived DH of her property right, defendants did nothing to deprive DH or Parents of their right to due process.

The IEP meetings did not occur because the plaintiffs wanted to exclude TPS' counsel and record the meetings, and when they persisted in their demands, the meetings ended.

Absent a showing that denial of Parents' demands contravened their right, or that of DH, to due process, plaintiffs cannot complain that the meetings never took place.

Parents have not shown that they had a due process right to exclude TPS' counsel or record the proceedings. Thus, rejection of their demands did not trigger either rights or remedies under the due process clause. To the extent that their child was harmed when the effort to create an IEP was aborted, plaintiffs cannot blame any such harm on the defendants.

"[T]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (internal citations

omitted). Plaintiffs and DH had the opportunity to be heard. Their own baseless demands led to the failure of the process.

After disputing Parents' ability to make audio or video recordings of IEP meetings and Meyer's ability to attend such meetings, TPS filed a due process proceeding, an option authorized by the IDEA. *See* 20 U.S.C. § 1415; 34 C.F.R. § 300.507(a)(1) ("A parent or public agency [including school board] may file a due process complaint on any of the matters . . . relating to the identification, evaluation or educational placement of a child with a disability, or the provision of FAPE to the child."). This proceeding afforded both the TPS and Parents adequate due process rights.

### ii. Substantive Due Process

The interests protected by substantive due process "include those protected by specific constitutional guarantees," actions that "shock the conscience," and certain interests that "the Supreme Court has found so rooted in the traditions and conscience of our people as to be fundamental." *Bell v. Ohio State Univ.*, 351 F.3d 240, 250 (6th Cir.2003). If government action does not fall into one of these categories, "that action survives the scythe of substantive due process so long as it is rationally related to a legitimate state interest." *Valot v. Southeast Local Sch. Dist. Bd. of Education*, 107 F.3d 1220, 1228 (6th Cir.1997).

Parents' complaint, very liberally construed, asserts that defendants violated substantive due process by advising TPS about the recording of meetings or attorney attendance. This is insufficient to state a claim.

There is no federal constitutional right to education, *San Antonio Index. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-37 (1973), so it follows that there is no constitutional right to record IEP meetings or preclude the attendance of a party's counsel at such meetings.

Parents contend that Ohio constitutional law provides DH with a fundamental right to education. Even assuming this is true, it is "federal constitutional law [that] determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause." *Memphis Light, Gas and Water Division v. Craft*, 436 U.S. 1, 98 S.Ct. 1554, 1560 (1978) (internal citations omitted); *Jones v. Lakeview School Dist.*, 2007 WL 2084341, * 3 (N.D. Ohio) ("To state a claim under section 1983, a plaintiff must allege the violation of a right secured by the *Constitution and laws of the United States*.") (emphasis provided).

In addition, TPS did not expel DH or refuse to enroll her in school. It merely refused to conduct an IEP meeting if Parents insisted on recording it or proceeding without its attorney. This behavior does not illustrate an abuse of power that "shocks the conscience." *See County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998).

### iii. Equal Protection Clause

"To state a claim under the Equal Protection clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *LRL Properties v. Portage Metro Housing Authority*, 55 F.3d 1097, 1111 (6th Cir.1995).

Parents' claim fails because neither they, nor DH, are members of a protected class. *See Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442 (1985) (internal citations omitted) (finding that persons with disabilities are not members of a suspect class for purposes of equal protection).

10

### iv. IDEA Claims Brought Under § 1983

Parents cannot rely on an IDEA violation to bring a § 1983 claim. *See Sellers by Sellers v. School Bd. of City of Mannassas, Va.*, 141 F.3d 524, 529 (4th Cir.1998) ("Because IDEA provides a comprehensive remedial scheme for violations of its own requirements, we hold that parties may not sue under section 1983 for an IDEA violation."). To the extent that they do this, their claims fail.

### C. Official and Individual Capacities

Parents sue defendants in their official and individual capacities. Generally, plaintiffs can file § 1983 claims against public officers in their official capacity as "another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (internal citations omitted). In such cases, liability remains with the entity. *Id.*

Meyer is a private person and Spengler is a private entity, both engaged in the practice of law, and both far from being an official or even a government employee. Because defendants are not agents of the State, they cannot be sued in their official capacity. *See id.*

Even if defendants, in their individual capacities, were somehow found to have violated a constitutional right, they would be entitled to qualified immunity. Government actors are entitled to qualified immunity unless they act unreasonably and violate a "clearly established" constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 302 (6th Cir.2005) (finding an officer to be entitled to qualified immunity unless: 1) a "constitutional violation" occurred; 2) "the violation involved a clearly established constitutional right of which a reasonable person would have known; and 3) the official acted "objectively unreasonable in light of the clearly established constitutional rights.")

Defendants did not violate a "clearly established" constitutional right. *See Cherrington v. Skeeter*, 344 F.3d 631, 636 (6th Cir.2003) ("For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."). No case has ever held that a school's filing of a due process complaint, restricting recording of proceedings, or having its attorney at an IEP meeting violated either due process or equal protection.

### 3. IDEA

The IDEA imposes obligations on school districts, not their attorneys. *See* 20 U.S.C. § 1400 *et. seq*. Thus, Parents' cannot bring an IDEA action against Meyer or Spengler.

### A. Unlawful Joinder

Under the IDEA, after the appellate state agency issues its opinion in an administrative action, the aggrieved party has the right to judicial review. 20 U.S.C. § 1415(i) ("Any party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action with respect to the complaint presented pursuant to this section, which action may be brought in any State court of competent jurisdiction or in a district court of the United States, without regard to the amount in controversy.").

The IDEA does not permit the aggrieved party to join any parties in a judicial appeal who were not included in the administrative complaint. I explained this in a prior judgment in this case. *See Horen v. Bd. of Education of Toledo City School Dist.*, 568 F.Supp.2d 850, 856 (N.D.Ohio 2008) ("[T]he ODE cannot be a party to *this* action because the Horens failed to name it in earlier administrative proceedings.") (emphasis in original).

12

Thus, Meyer and Spengler's 12(c) motion pertaining to any issues raised in the administrative appeal, namely, IDEA claims, is granted on this ground as well.

### B. Damages

However, assuming Parents could move forward with their IDEA claim, their request for general compensatory and punitive damages is untenable because such damages are not available under the IDEA. *See Diaz-Fonseca v. Commonwealth of Puerto Rico*, 451 F.3d 13, 31 (1st Cir.2006) (holding that punitive or general compensatory damages cannot be awarded in an IDEA suit); *Sellers*, *supra*, 141 F.3d at 526-27 (explaining that the provision of compensatory or punitive damages would be inconsistent with the IDEA's structure).

Further, Parents cannot cloak an IDEA claim as a § 1983 claim to receive compensatory or punitive damages. *See Diaz-Fonseca*, *supra*, 451 F.3d at 28 (holding that "§ 1983 cannot be used to escape the strictures on damages under the IDEA"); *Doe v. Westerville City School Dist.*, 2008 WL 2323526, *4 (S.D.Ohio).

### 4. Section 504 of the Rehabilitation Act

To establish a cause of action under § 504 of the Rehabilitation Act, a plaintiff must establish that: 1) she is "disabled" under the Act; 2) she is "otherwise qualified" to participate; 3) the program excluded her solely because of her disability; and 4) the program receives federal financial assistance. *Sandison v. Michigan High School Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030-31 (6th Cir.1995).

Parents' claim under § 504 fails for two reasons. First, neither Meyer nor Spengler receive federal financial assistance. *See Bragdon v. Abbott*, 524 U.S. 624, 632 (1998) ("Section 504 prohibits discrimination against individuals with disabilities by recipients of federal financial

assistance."). I disagree with Parents' contention that so long as TPS receives federal funds, an actor associated with TPS is also subject to § 504. *See Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir.2002) ("Because the individual defendants [including outside legal counsel] do not receive federal aid, Emerson does not state a claim against them under the Rehabilitation Act.").

Next, Parents cannot establish that Meyer or Spengler are a "program." *See* 29 U.S.C. § 794(b)(3)(A) (defining "program" to include corporations or partnerships receiving financial assistance or engaged in certain businesses, not including the provision of legal services).

Notably, even if Parents could have proven this claim, their claim for punitive damages would have to be dropped as punitive damages are not available under § 504. *Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("[P]unitive damages .  .  .  may not be awarded in suits brought under .  .  . § 504 of the Rehabilitation Act.").

### 5. Title II of the ADA

Title II of the ADA states that no "qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132; *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 903-04 (6th Cir.2004).

The ADA's definition of "public entity" does not include private individuals or private entities. *Ability Center, supra*, 385 F.3d at 904 ("Public entity" includes "any state or local government" and "any department, agency, special purpose district, or other instrumentality of a State or States or local government").

Parents' ADA claim cannot proceed because neither defendant is a "public entity" and thus, neither has obligations under Title II of the ADA. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S.

14

581, 589 (1999) (noting that Title II applies to public services furnished by governmental entities); *Garcia v. S.U.N.Y. Health Sciences Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir.2001) (finding that individuals cannot be liable under Title II of the ADA); *Key v. Grayson*, 163 F.Supp.2d 697, 715 (E.D.Mich. 2001) (following great weight of authority holding that individuals cannot be liable in their individual capacities under Title II of the ADA).

As with suits brought under § 504, punitive damages are not available under the ADA. *Barnes*, *supra*, 536 U.S. at 189. Thus, even if Parents had properly pled their case, their request for such relief must be dismissed.

### Conclusion

Plaintiffs' claims against Spengler and Meyer are entirely without merit. Were this a typical *pro se* case, simple dismissal would suffice.

For the foregoing reasons, it is hereby:

ORDERED THAT defendants Randy L. Meyer and Spengler Nathanson P.L.L.'s Rule 12(c) motion, construed as a Rule 12(b) motion be, and the same hereby is granted. [3]

So ordered.

s/James G. Carr
James G. Carr

---

[3] This is not a typical *pro se* case: the parent mother, Joanne E. Horen, is an attorney. While I understand a mother's passionate commitment to her child's welfare, and equally passionate conviction that the school has not served that welfare, that does not excuse the bringing of these claims – or the bringing of these claims as part of an otherwise straightforward appeal from an administrative decision. In light of the TPS' failure to seek sanctions under Rule 11 and 28 U.S.C. § 1927, I will not order Ms. Horen to show cause why she should not be sanctioned under those provisions. However, if plaintiffs appeal this decision, and if the Sixth Circuit sustains it, I will expect TPS to seek to recoup the public funds that it has needlessly expended responding to Parents' meritless claims, both in this court and on appeal.

15

Chief Judge