IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Glenn S. Horen, et al.,                                    Case No. 3:08CV2119

               Plaintiff

     v.                                                        ORDER

Board of Education of City
       of Toledo Public School District, et al.,

               Defendant

     This is one of a set of lawsuits between parents of a severely disabled child and the Board

of Education of the City of Toledo Public Schools [TPS].[1] In this suit, the plaintiffs claim, *inter alia*,

that the defendants have failed to provide rights guaranteed to their child under the Individuals With

Disabilities Education Act [IDEA], 20 U.S.C. § 1400 *et seq*. The gravamen of plaintiffs' federal

---

[1]

In May, 2006, the parents filed suit in Lucas County, Ohio, Court of Common Pleas regarding child's participation in a school breakfast program, and other disputes. Parents' complaint in that action has since been amended three times, and the action remains pending.

In August, 2006, the parents filed an administrative due process complaint against TPS, which was designated as Case No. SE-1872-2006 by the Ohio Department of Education. Parents and TPS each filed appeals regarding certain aspects of the administrative determinations. After the parents' case was removed to this Court, it became denominated *Horen v. Board of Education et al*, 3:07CV3779 (N.D. Ohio). I dismissed the parents' appeal on jurisdictional grounds. *Horen v. Bd. of Educ*., 568 F.Supp.2d 850 (N.D.Ohio 2008).

TPS filed this case, *Board of Education of the Toledo City School District v. Horen*, 3:07CV3631 (N.D. Ohio), directly in this Court as an appeal from a state administrative decision favoring the parents' child. Once the parents' and TPS's suits were both in this Court, they were consolidated.

claims is that TPS has failed to develop an Individual Education Plan [IEP] for their child. TPS has not done so because the plaintiffs have insisted that they have the right to tape record those sessions; a right which TPS denies they have. In addition, plaintiffs object to TPS's insistence that its counsel attend all IEP sessions.

As a result of this impasse, no IEP has been  prepared for the child. The parents have withdrawn her from TPS. Plaintiffs claim, in essence, that TPS has denied their child the Free Appropriate Public Education [FAPE] which federal law entitles her to receive.

TPS filed an administrative complaint asserting, *inter alia*, the right to have its attorney attend IEP sessions, and challenging the plaintiffs' demand to record those sessions. The State Level Review Officer [SLRO] ruled in favor of TPS. In addition to their claims under IDEA, plaintiffs seek review and reversal of the administrative decision.

Pending are motions by the parties for summary judgment. Plaintiffs seek summary judgment on the basis that the Ohio Department of Education failed to file the administrative record in a timely manner. [Doc. 38]. Defendants seek summary judgment as to plaintiffs' claims. [Doc. 41]

For the reasons that follow, the plaintiffs' motion shall be overruled, and the defendants' motion shall be granted.

## Background

There is no dispute that the child on whose behalf plaintiffs file this suit is severely learning disabled. At issue in this case is the fact that no IEP has been in place for the child for more than two years. This is so, despite the fact that TPS, beginning on January 30, 2007, convened, or sought to convene IEP meetings. Plaintiffs demanded to be able to record those meetings. TPS, which, over

the parents' objections, had counsel present, refused to proceed unless plaintiffs would agree not to record the meetings. In response, plaintiffs insisted that they had the right to record the meetings.

As a result of this impasse, and its consequence – namely, that the parties did not prepare an IEP for the child – TPS filed an administrative due process complaint. In that complaint, TPS sought an order: 1) directing the parents to participate in IEP meetings without making audio or video recordings absent prior agreement of TPS staff participants; 2) authorizing attendance of TPS's attorney at the IEP meetings; and 3) directing the parents to send the child to school, or, alternatively, to inform TPS that she is being home-schooled or otherwise educated.

The Impartial Hearing Officer [IHO] issued a decision in favor of TPS. The SLRO affirmed.

Parents brought this suit.[2] Their amended complaint names, in addition to TPS, TPS Superintendent John Foley and TPS Director of Student Services Thom Billau ["Individual defendants"].

Plaintiffs' complaint asserts claims under: 1) 42 U.S.C. § 1983 and the IDEA; 2) Due Process and Equal Protection clauses of the United States Constitution; and 3) Ohio law.

## Discussion

## 1. Section 1983

## A. IDEA

Plaintiffs seek recovery under the IDEA *via* § 1983. That provision, does not, however, provide the means by which an aggrieved party can sue for alleged violations of either statute.

---

[2]

Plaintiffs named TPS counsel and his firm as codefendants. By prior order, I dismissed plaintiffs' claims as to them. *Horen v. Bd. of Educ of Toledo City Sch. Dist.,* 594 F.Supp.2d 833 (N.D.Ohio 2009).

*Chuhran v. Walled Lake Consol. Schools,* 1995 WL 138882, *2 (6th Cir.) ("The § 1983 claim fails too because it is predicated solely upon his IDEA, Rehabilitation, and ADA claims."); *Sellers by Sellers v. Sch. Bd. of City of Mannassas, Va.*, 141 F.3d 524, 529 (4th Cir. 1998) ("Because IDEA provides a comprehensive remedial scheme for violations of its own requirements, we hold that parties may not sue under § 1983 for an IDEA violation."). Indeed, I have already so ruled in my earlier decision in this case. *Horen, supra*, 594 F. Supp.2d at 845 ("Parents cannot cloak an IDEA claim as a § 1983 claim to receive compensatory or punitive damages.").

In any event, as defendants point out, IDEA imposes duties exclusively on institutional entities, not individuals. As there is no duty being imposed on the individual defendants, they could not be held liable under IDEA.

In their § 1983 claim, plaintiffs demand compensatory and punitive damages for defendants' alleged violations of IDEA. Damages are not, however, available under the statute.

With regard to compensatory damages, the court stated in *Sellers, supra*:

> Compensatory or punitive damages would transform IDEA into a remedy for pain and suffering, emotional distress, and other consequential damages caused by the lack of a free appropriate public education. Such a result would be inconsistent with the structure of the statute, which so strongly favors the provision of and, where appropriate, the restoration of educational rights.

141 F.3d at 527.

To the extent damages are available under IDEA, they are limited. *Gean v. Hattaway*, 330 F.3d 758, 774 (6th Cir. 2003) ("discretion to award monetary damages under this statute extends only to restitution for money that should have been paid by the state for educational services - not to 'general damages'").

The Supreme Court likewise held in *Barnes v. Gorman*, 536 U.S. 181, 184-89 (2002), that punitive damages are not available for a violation of IDEA.[3]

Thus, even though plaintiffs have tried to cloak their IDEA claims in the guise of § 1983, prevailing law requires unmasking such claims and granting summary judgment in defendants' favor.

## B. Equal Protection

Plaintiffs also seek recovery *via* § 1983 under the Equal Protection Clause of the Fourteenth Amendment. Though plaintiffs do not specify the equal protection standard on which they are proceeding, it appears that they seek to assert that their child is a "class of one," rather than a member of a favored class, and defendants treated her differently from similarly situated children *vis-a-vis* the benefits of IDEA. *See Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (equal protection claim may be brought by "class of one" where plaintiff alleges that she has, without a rational basis for such treatment, been intentionally treated differently than others similarly situated).

Defendants are entitled to summary judgment on this claim because plaintiffs have not shown that defendants treated plaintiffs' daughter any differently than children like her. Absent such proof, plaintiffs' claim must fail.

---

[3]

I indicated in my earlier decision in this case that neither compensatory nor punitive damages are available under IDEA. *Horen, supra*, 594 F.Supp.2d 845 (parents' "request for general compensatory and punitive damages is untenable because such damages are not available under the IDEA").

### C. Due Process

The parents claim that TPS and defendant Billau acted under color of state law to deprive their child of her substantive and procedural due process rights. They do not, however, specify the putative substantive or procedural rights the defendants denied them.[4]

With regard to the merits of plaintiffs' due process claims, I conclude that defendants are entitled to summary judgment on multiple grounds.

First, the amended complaint contains conclusory allegations that defendants have deprived them of due process. The complaint contains insufficient factual allegations in support of its conclusory obligations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986) (a court is "not bound to accept as true a legal conclusion couched as a factual allegation").

Even if plaintiffs had adequately pleaded a substantive or procedural due process claim, defendants would be entitled to judgment because plaintiffs have not established that they had a cognizable liberty or property interest.

To prevail on a procedural due process claim, plaintiffs must establish that: 1) they have a life, liberty, or property interest protected by the Due Process Clause; 2) a state actor deprived them of such interest; and 3) the state did not provide adequate procedural rights before the deprivation. *E.g., Zinermon v. Burch*, 494 U.S. 113, 125-26 (1990).

---

[4]

To the extent that plaintiffs seek recovery against the individual defendants on the basis of their "official" capacity, those defendants are entitled to summary judgment. An official capacity claim is "an alternative way of pleading an action against the entity for which the officers are employed." *Dudley v. Eden*, 49 F. Supp. 2d 581, 589 n.5 (N.D. Ohio 1999) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). If plaintiffs proved the individual defendants liable in their official capacity, TPS, not the individual defendants, would be answerable.

The gravamen of plaintiffs' due process claim appears to be the contention that the IHO proceeded with the hearing, despite plaintiffs having informed him that Mr. Horen would be unavailable. Thus, in effect, they requested a continuance, which the IHO denied.

This action by the IHO cannot be attributed to the defendants, and the defendants cannot be held accountable for any abuse of discretion on his part. Plaintiffs fail, accordingly, to show that the defendants deprived them of their right to be heard.[5]

Defendants likewise caused no violation of substantive due process. To establish such a claim, the plaintiffs must show that the defendants' exercise of authority was so wrongful that it "shocks the conscience." *See Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 535 (6th Cir. 2008) (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)). This is a difficult standard to meet, as noted in *Lewis*: "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" 523 U.S. at 846 (citation omitted).

I agree with the defendants that plaintiffs plead no facts rising to an abuse of power by defendants.

Moreover, as the defendants also point out, the Supreme Court has not identified education as a fundamental right. *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 33-37 (1973); *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 287 (5th Cir. 2005) (en banc) ("[T]he Supreme Court has not recognized access to public education or freedom from disability discrimination in education to be fundamental rights.").

---

[5] If what plaintiffs are complaining about with regard to their procedural due process claim is this litigation, they fail to state a claim. Even if, as they contend, TPS has no standing to file an administrative due process complaint, as it did in this case, the fact that TPS did so does not deprive the plaintiffs of due process of law.

7

There is no merit to plaintiffs' procedural or substantive due process claims. Defendants are, accordingly, entitled to judgment as to those claims.

### D. Qualified Immunity of Individual Defendants

Plaintiffs' claims under § 1983 against the individual defendants – whether in their official or individual capacities – are so wanting in merit that consideration of whether they would otherwise be entitled to qualified immunity seems unnecessary.[6] Nonetheless, I agree with the defendants that, even if plaintiffs had and could assert a viable claim *via* § 1983 against either or both defendants, the defendants would be entitled to qualified immunity.

Once a § 1983 plaintiff shows, as plaintiffs here have not, that a state actor has violated a constitutional or other federal law, the next question is "whether the right was clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). As stated in *Cherrington v. Skeeter*, 344 F.3d 631, 640 (6th Cir. 2003):

> For a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. Although it need not be the case that the very action in question has been previously held unlawful  .   .   . in the light of pre-existing law, the unlawfulness must be apparent.

As the defendants point out, no court with authority over this court has held that the putative facts giving rise to plaintiffs' claims against the individual defendants violated the Constitution or laws of the United States. Those facts, cannot, therefore, give rise to a judgment against the defendants – even if they committed such violation, and even if either compensatory or punitive damages, or both, were available. Defendants are entitled to qualified immunity.

---

[6]

*See Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.") (citation omitted).

## E. Derivative Liability Under § 1983 of TPS

Even if plaintiffs had a compensable § 1983 claim against the individual defendants, no basis would exist on which TPS could be held accountable for any resulting damages. This is so, because they have not shown, and no jury could find, that the individual defendants, when they did whatever it was they did that gives rise to this suit, were acting in furtherance of a TPS policy. Proof of such policy is a *sine qua non* of institutional liability in a § 1983 case. *E.g., Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[W]hen execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."); *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008).

## 2. Rehabilitation Act and Americans with Disabilities Act

## A. Discrimination

Plaintiffs claim defendants discriminated against their daughter on the basis of disability in violation § 504 of the Rehabilitation Act, 29 U.S.C. § 794(a) and Title II of the ADA, 42 U.S.C. § 12132, *et seq*. Such discrimination, according to their complaint, involved: 1) educational placement at EduCare, a "segregated" facility, which was not the least restrictive environment; 2) proposed placement at Larchmont, a less restrictive environment in an elementary school, which was not a safe placement; and 3) contracting with Visiting Nurse Extra Care, which provided services only at EduCare.

To prevail on a § 504 claim, plaintiffs must show:

(1) The plaintiff is a "disabled person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his . . . disability; and (4) The relevant program or activity is receiving Federal financial assistance.

*Sandison v. Michigan High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1031 (6th Cir. 1995).[7]

Plaintiffs cannot establish a *prima facie* case of discrimination under § 504 of the Rehabilitation Act: they have not pointed to a similarly situated child who was treated differently than their daughter.[8]

Even if plaintiffs had been able to establish a *prima facie* case, they cannot overcome their burden of proving that the explanation offered by TPS is pretextual. TPS attributes the lack of an IEP to the parents' insistence on tape recording the IEP planning meetings and opposing attendance by TPS's attorney. Plaintiffs themselves acknowledge that that is what caused the IEP sessions not to go forward. Thus, they do not challenge the explanation which TPS offers for the lack of an IEP.

What matters in this case is whether that explanation was lawful – *i.e.,* whether TPS properly refused to proceed when plaintiffs refused to participate unless they could record the proceedings.

---

[7]

The individual defendant in this segment of plaintiffs' complaint, Billau, does not receive federal aid. He is, therefore, entitled to summary judgment because plaintiffs cannot state a claim against him under § 504. *See Emerson v. Thiel College*, 296 F.3d 184, 190 (3d Cir. 2002).

[8]

The conventional test for ascertaining similarly situated individuals is that stated in *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992), which requires a plaintiff to "show that the 'comparables' are similarly-situated in all respects." Overly rigorous application of this standard in cases involving learning disabled children might have a preclusive impact on claims on their behalf under IDEA and ADA. In a case such as this, I believe the *Mitchell* standard would be met where the comparable, similarly situated child has substantially the same degree of learning difficulties, to the extent applicable, physical impediments and behavioral problems contributing to the child's learning disability and a substantially equivalent IEP which, in the case of the comparable, was implemented, where it was not in the case of the child on whose behalf relief was being sought. This still would require a plaintiff to point to similarly situated individuals in a case where the *McDonnell-Douglas* framework applied. Plaintiffs fail to point to anyone else, similarly situated or not, with regard to their claim of discrimination against their daughter.

10

Plaintiffs, likewise, cannot establish that TPS discriminated against their daughter in violation of Title II of the ADA.

## B. Retaliation

The plaintiffs' claim of retaliation likewise fails, albeit for a different reason: plaintiffs failed to present such claim in the administrative proceedings. Exhaustion is a prerequisite to filing a civil complaint under IDEA. 20 U.S.C. § 1415(l). That requirement applies equally to a § 504 claim. *See S.E. v. Grant Co. Bd. of Educ.*, 544 F.3d 633, 641-43 (6th Cir. 2008) ("When a claim under [the Rehabilitation Act] involves public education, we must me consider a provision in the Individuals with Disabilities Education Act (IDEA). The IDEA states that, before bringing claims under other statutes (specifically listing the Rehabilitation Act) seeking relief that is also available under this subchapter the administrative procedures in § 1415 must be exhausted to the same extent had the action been brought under this subchapter."). (internal citations omitted).

Plaintiffs, who appear adept at finding ways of asserting rights under IDEA, clearly had the ability to assert the various incidents which they allege were retaliatory. Section 1415(b)(6)(A) authorizes them to present administrative complaints "with respect to any matter relating to the identification, evaluation, or placement of a child, or the provision of a [FAPE] to such child."

The IDEA's exhaustion requirement applies to all types of claims under § 504, including claims of retaliation, such as plaintiffs make here. *See M.T.V. v. DeKalb County Sch. Dist.*, 446 F.3d 1153, 1157-59 (11th Cir. 2006) ("[W]hether claims asserting the rights of disabled children are brought pursuant to the IDEA, the ADA, Section 504, or the Constitution, they must first be exhausted in state administrative proceedings."); *Accord*, *B.H. v. Portage Public Sch. Bd. of Educ.*, 2009 WL 277051, *5 (W.D.Mich.).

Due to want of exhaustion of state administrative remedies, plaintiffs cannot prevail on their claim of retaliation.[9]

### 3. IDEA: Appeal of SLRO
### Decision re. TPS Due Process Complaint

Parents appeal the decision by the SLRO that, as alleged in its administrative complaint, TPS could properly refuse to allow tape recording of the IEP proceedings, and its attorney could attend those proceedings.[10] I am to apply a modified *de novo* standard of review to the parents' appeal, as explained in *Thomas v. Cincinnati Bd. of Educ.*, 918 F.2d 618, 624 (6th Cir. 1990), and *Burilovich v. Bd. of Educ. of Lincoln Consol. Schools*, 208 F.3d 560, 567 (6th Cir. 2000). Applying that standard, I affirm the SLRO's decisions.

### A. Recording of IEP Meetings

Plaintiffs claim they are entitled to record their daughter's IEP sessions. The district court decisions and Department of Education document on which they rely do not support their contentions.

Cases which have allowed parental recording are factually distinguishable. In *E.H. v. Tirozzi*, 735 F. Supp. 53, 57 (D. Conn. 1990), a parent needed to take record meetings because she was a native Danish speaker, and had trouble understanding and following written and spoken English. In *V.W. v. Favolise*, 131 F.R.D. 654, 658 (D. Conn. 1990), a parent sought to tape IEP meetings

---

[9]

In addition, parents' retaliation claims arising from incidents before September 3, 2006, are also barred by Ohio's two-year statute of limitations, as parents filed their original claim on September 3, 2008. *James ex rel. James v. Upper Arlington City Sch. Dist.*, 228 F.3d 764, 770 (6th Cir. 2000). Parents' retaliation claims also fail on the merits.

[10]

TPS's refusal to proceed unless plaintiffs withdrew their demand to record the IEP sessions is the principal focus of plaintiffs' opposition to TPS's motion for summary judgment.

because a disabling injury to her hand made notetaking difficult. Here, parents have shown no similar need for tape recording.

Plaintiffs also contend that a 1990 communication from the Department of Education Office of Special Education Programs [OSEP], 17 IDELR 565, supports their demand for an unlimited right to record IEP sessions. That communication interpreted regulations relating to the Education of the Handicapped Act, predecessor to IDEA.

In any event, the Department has issued a superceding communication following enactment of IDEA:

> [T]he position expressed in Memorandum 88-17 does not reflect OSEP's current position regarding the use of audio or video tape recorders at IEP team meetings. The Department issued OSEP Memorandum 91-24 on July 18, 1991 clarifying and amending OSEP's position as expressed in Memorandum 88-17. I am enclosing a copy of Memorandum 91-24.
>
> *  *  *  *  *
>
> If a public agency has a policy that prohibits or limits the use of recording devices at IEP meetings, that policy must provide for exceptions if they are necessary to ensure that the parent understands the IEP or the IEP process or to implement other parental rights guaranteed under Part B  .   .   ..
>
> *  *  *  *  *
>
> Parents wishing to use audio or video recording devices at IEP meetings should consult State or local policies for further guidance.

40 IDELR 70.

TPS represents, and the plaintiffs do not dispute, that it provided the full text of this communication and a memorandum to which it refers in June, 2007. The plaintiffs have not contended that they fall within an exception to the no-recording rule.

The record shows, moreover, that the plaintiffs have been aware of the prohibition on recordings since 2005, and that parents have been in possession of the TPS no-recording policy, as embodied in its union contract, before the instant dispute arose. As a consequence of that provision, recording shall not occur without the consent of TPS personnel participating in the session.

Plaintiffs challenge TPS's ability to raise its contentions about its no-recording provision in the context of a due process complaint. As TPS contends, issues relating to non-recording policies have been held to be a proper subject for a due process complaint. In *Gardner v. Sch. Bd. Caddo Parish*, 958 F.2d 108, 111 (5th Cir. 1992), plaintiff parents unsuccessfully sought an order enjoining implementation of a district's prohibition on recording IEP meetings. The court held that the plaintiffs had to have raised their contention in an administrative proceeding – *i.e., via* a due process complaint. *Id.* at 109. The parents having not exhausted this administrative remedy, the court denied relief. *Id*. at 111.

TPS is, accordingly, entitled to affirmance of the SLRO's decision upholding TPS's implementation of the no-recording rule.

### B. Attendance by TPS Counsel

Plaintiffs have no legal basis on which to refuse to participate in an IEP session simply because one of TPS's attorneys is present. As recited by TPS in its motion for summary judgment, regulations adopted under IDEA extend broad discretion to the parties to have those in attendance whom they desire to have present. The statute expressly permits attendance of persons "at the discretion of the parent or the agency, other individuals who have knowledge or special expertise regarding the child, including related services personnel." 20 U.S.C. § 1414(d)(1)(B)(vi). *Accord*,

14

34 CFR § 300.321(a)(6). It is left to the parties to determine who has the requisite knowledge and expertise. 34 CFR § 300.321(c).

These are broadly worded provisions, and do not give any party, whether parents or a school board, the authority to veto attendance by persons whom another party wants to have present. The plaintiffs, in any event, certainly have not shown that either TPS or the SLRO erred in their application of these provisions.

### C. Failure to Bring the Child to School

Due to the plaintiffs' continuing dispute with TPS, and their insistence that they have the right to record IEP meetings and bar TPS's counsel from attending those meetings, the plaintiffs have refused to have their child attend school. TPS seeks affirmance of the SLRO's affirmance of the IHO's conclusion that the child's non-attendance was "not due to unresolved issues about [the child's] educational placement." According to the plaintiffs, the hearing officers were without jurisdiction to consider this use because non-attendance at school is within the purview of the Juvenile Court.

As the IHO and SLRO acknowledged, they were without jurisdiction to adjudicate whether the child was, due to the plaintiffs' actions, truant. The IHO's decision ordered plaintiffs to either bring the child to school or inform the district that she is being home schooled or otherwise educated. If plaintiffs did not respond to that directive, the IHO stated, TPS should proceed in a court of competent jurisdiction to compel the plaintiffs to comply.

The SLRO concluded that the IHO could properly determine whether the child was attending school or otherwise being educated in accordance with the law. The hearing officers could likewise

15

direct the parents to bring the child to school so that she could be educated there or confirm that she was being otherwise educated.

I agree with TPS that these determinations and directives were within the scope of the hearing officers' authority and jurisdiction. The parties have a duty to participate in the IEP process. The hearing officers concluded that the parents were mistakenly not doing so on the basis of their unfounded contentions about recording and participation by TPS counsel. This determination and resulting directives came well within the reach of the administrative proceedings.

I also agree that TPS could seek to have the plaintiffs comply with the officer's directives through further due process proceedings. There is a clear and proper nexus between the officer's directives, which seek to confirm the child's educational status and TPS's efforts to have those directives enforced *via* the mechanism of a due process complaint.

TPS's contentions are well-taken, and those of the plaintiffs are not.

### D. Other Issues

### i. IHO's Impartiality

The plaintiffs complained to the Department of Education about the IHO's lack of impartiality. The Department found that their contentions had no merit. By not participating in the hearing, the parents declined, *inter alia*, to challenge the officer's putative partiality. Thus, there was no ruling as to that issue. Consequently, the plaintiffs' allegations about the officer's lack of neutrality are not within the scope of this court's review under 20 U.S.C. § 1415(g).

### ii. Effect of Interlocutory Appeal

The plaintiffs contend that the hearing should not have proceeded while their interlocutory appeal was pending. The SLRO rejected this contention in light of 20 U.S.C. § 1415(g), which

permits an appeal only from "the findings and decision rendered in" a due process hearing encompassed within 20 U.S.C. § 1415(f).

The plaintiffs could not distort and delay the process by their premature interlocutory appeal for which there is no statutory authority. Their contention here on that issue is without merit.

### iii. Waiver

The SLRO concluded that the plaintiffs' failure to attend the hearing waived their right to present evidence or raise procedural issues during the appeal before her. In light of the nature of the proceeding before the SLRO,[11] the plaintiffs were precluded from challenging the IHO's alleged partiality and asserting other procedural objections before the SLRO. They had waived such challenge below, and could not assert it for the first time in the proceedings before the SLRO.

Parties have the duty to preserve error in an administrative hearing. *See Freytag v. C.I.R.*, 501 U.S. 868, 899 (1991) (consideration of alleged error during administrative hearing is "procedurally barred as a result of petitioner's failure to raise it in his administrative proceeding"); *Cox v. Benefits Review Bd.*, 791 F.2d 445, 447 (6th Cir. 1986) (reviewing court cannot "consider an argument which has not been raised in the agency proceeding which precedes the appeal"); *Tipton v. Woltz*, 2005 WL 3557133, *8 (Ohio App.) ("[F]ailure to raise an issue before an administrative board operates as a waiver of that issue later in the appeal process.").

Plaintiffs elected to stay away from the hearing before the IHO. Due to that decision, they could not complain to the SLRO about any procedural errors, and they cannot do so here.

---

[11]

Section 1415(g)(2) authorized the SLRO only to conduct "an impartial review of the findings and decision" from which an aggrieved party is appealing.

17

### iv. Pre-Hearing Discovery

Plaintiffs assert the SLRO erred in finding that there is no express right to pre-hearing discovery in due process proceedings. The officer committed no error, as discovery of the sort desired by the plaintiffs is not among the rights provided during a due process proceeding in §§ 1415(f)(2), 1415(h) or 34 CFR § 300.512.

Pre-hearing discovery of the sort demanded by the plaintiffs is antithetical to the principle of prompt adjudication. Due in no small part to the plaintiffs' actions, their child has been denied the benefits of IDEA and the procedures implemented under that statute. Introducing conventional pre-trial discovery into the administrative review process would not serve to fulfill the statutory purposes. Indeed, by adding delay, distraction and expense, it would frustrate those purposes.

The plaintiffs cannot complain that they cannot obtain pre-hearing discovery, as they do not have the right to it.

### v. TPS was the Prevailing Party

The plaintiffs claim the SLRO erroneously concluded that TPS, rather than they, had prevailed in the administrative proceedings. They are wrong – the SLRO affirmed the IHO's decison, which favored TPS. It, accordingly, was the prevailing party throughout the administrative process.

In any event, an award of attorneys' fees can occur only in judicial, not administrative proceedings under IDEA. *See* 20 U.S.C. § 1415(i)(3)(B)(i)20; *Buckhannon Bd. v. W. Va. Dep't of Health & Human Res*., 532 U.S. 598, 604 (2001) ("The term prevailing party also requires that there be a *court-ordered* change [in] the legal relationship between [the plaintiff] and the defendant.") (Emphasis supplied; internal quotation marks omitted).

18

### vi. Scheduling of the Hearing

Plaintiffs challenge the SLRO's finding that their explanation for their failure to attend the hearing before the IHO was insufficient. Though the plaintiffs told the IHO that Mr. Horen was unavailable on the hearing date, they had initially agreed to the date.

Plaintiffs sought a continuance before the hearing. The reasons they stated then did not include the father's inability to attend. The reasons then offered were not sufficient.

No error occurred when the IHO declined to continue the hearing and the SLRO upheld that decision.

### vii. Right to be Heard Before SLRO

The plaintiffs contend that the SLRO erred by determining that filing "a merit brief was the same as being able to present evidence at the due process hearing." [Doc. 25].

TPS correctly responds with the observation that the SLRO made no such finding. Instead, the SLRO recognized that despite the plaintiffs' failure to appear at the IHO hearing, the parents had a transcript of that proceeding and were permitted to submit written arguments for consideration.

The SLRO was correct; there is no merit to plaintiffs' contentions.

### viii. Plaintiffs' Summary Judgment Motion

The plaintiffs claim to be entitled to summary judgment because the Ohio Department of Education [ODE], which is not a party to this case, did not file the administrative record in this court within thirty days of plaintiffs' complaint and notice of appeal.

Plaintiffs based their contention on O.R.C. § 119.12, which provides, "Any party adversely affected by any order of an agency issued pursuant to any other adjudication may appeal to the court of common pleas."

By its own terms, that section applies to appeals to the Court of Common Pleas, not to appeals, such as is before me in this court, under O.R.C. § 3323.05(H).[12]

Moreover, as defendants point out, the Department's duty to file the record is triggered by its receipt of a notice of appeal. Plaintiffs have not shown that they served a copy of their notice of appeal on the Department.

In sum: this is a federal proceeding governed by 20 U.S.C. § 1415(i)(2) and federal procedural rules. Rules and requirements applicable to state proceedings play no role here. *See generally Penn Gen. Cas. Co. v. Commonwealth of Pennsylvania*, 294 U.S. 189, 197 ("The jurisdiction conferred on the District Courts by the Constitution and laws of the United States cannot be affected by state legislation."); *Herron v. Southern Pac. Co.*, 283 U.S. 91, 97 ("a federal court is not subject to state regulations, whether found in constitutional provisions or in statutes. . . ."); *Amis v. Smith*, 41 U.S. 303, 304 (1842) ("It is the duty of the supreme court to preserve the supremacy of the laws of the United States, which they cannot do, without disregarding all state laws, and state decisions, which conflict with the laws of the United States.").

### 4. State Law Claim of Fraudulent Misrepresentation

Parents allege that TPS's counsel made fraudulent misrepresentations to this Court and Mrs. Horen's employer, and that TPS made fraudulent misrepresentations to ODE.  These allegations are not well-taken.

Parents have failed to plead a claim for fraud under Rule 9(b)'s heightened pleading requirements. Under Fed.R.Civ.Pro. 9(b), plaintiffs must plead the "circumstances constituting fraud

---

[12] Section 3323.05(H) allows an aggrieved party to file an appeal a decision by the SLRO in either the state Common Pleas Court or a federal district court.

include the time, place and content of the false representation; the fact misrepresented; the identification of the individual giving the false representation; and the nature of what was obtained or given as a consequence of the fraud." *Aluminum Line Product Co. v. Brad Smith Roofing, Co.*, 109 Ohio App.3d 246, 259 (1996) (internal citations omitted). By failing to identify the content of the representations and the circumstances surrounding them, plaintiffs have not satisfied Rule 9(b)'s heightened pleading requirements.

Plaintiffs' claims also fail on the merits. To prevail on a claim of fraudulent misrepresentation, plaintiffs must establish: 1) a representation, or a concealment in the face of a disclosure duty; 2) the representation's materiality; 3) that the defendant's representation was made falsely, with knowledge of its falsity, or with reckless disregard to its veracity; 4) the defendant's intent to mislead; 5) the plaintiff's justifiable reliance on the representation or concealment; and 6) a resulting injury proximately caused by the reliance. *Burr v. Bd. of County Com'rs of Stark County*, 23 Ohio St.3d 69, 73 (1986) (quoting *Cohen v. Lamko, Inc*., 10 Ohio St.3d 167, 169 (1984)).

Parents have failed to establish that defendants' alleged misrepresentations were material, justifiably relied on by the parents and the proximate cause of an injury.

### Conclusion

Defendants are entitled to summary judgment. The plaintiffs' summary judgment motion has no merit.

That being so, it is

ORDERED THAT:

1. Defendants' motion for summary judgment [Doc. 41] be, and the same hereby is granted; and

21

2. Plaintiffs' motion for summary judgment [Doc. 38] be, and the same hereby is denied.

So ordered.


                                        s/James G. Carr
                                        James G. Carr
                                        Chief Judge